# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THOMAS HANCOCK,** | : | **CIVIL NO. 1:18-CV-687** |
| **Petitioner** | : | **(Chief Judge Conner)** |
| v. | : | |
| **WARDEN WHITE,** | : | |
| **Respondent** | : | |

## **MEMORANDUM**

Presently pending before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1), filed by petitioner Thomas Hancock ("Hancock"), an inmate confined at the United States Penitentiary, Allenwood, Pennsylvania. Hancock contends that his due process rights were violated in the context of a disciplinary hearing held at the at the Federal Correctional Institution in Morgantown, West Virginia ("FCI-Morgantown"). For the reasons set forth below, the court will deny the habeas petition.

## I. Background

Hancock is serving a 100-month sentence for conspiracy to distribute, and possession with intent to distribute, 100 grams or more of a mixture and substance containing a detectable amount of heroin. (Doc. 1, at 5-7, Public Information Inmate Data). His projected release date is January 1, 2023, via good conduct release time. (Id.)

In the instant petition, Hancock challenges disciplinary proceedings that were held at FCI-Morgantown in which he was found guilty of violating code 108, possession of a hazardous tool – cell phone. (Doc. 1). Hancock contends that he did not receive proper notice of the offense, and he challenges the sufficiency of evidence. Hancock claims that constructive possession cannot apply to this charge because there is no evidence that physically connects him to the smuggled cell phone. (Id. at 2-3). For relief, Hancock seeks expungement of the incident report, and restoration of forty-one (41) days good conduct time. (Id. at 4).

## II. Discussion

On July 28, 2017, a staff member at FCI-Morgantown issued incident report 3015333 charging Hancock with possession of a hazardous tool – cell phone. (Doc. 7-1, at 13, Incident Report, §§ 1-16). The incident is described as follows:

> On July 24, 2017, at approximately 10:45 p.m., staff discovered a ZTE cell phone in the possession of [another inmate]. While the Operation's Lieutenant was taking a photograph of the cell phone, at 10:56 p.m., an incoming "Whatsapp video call" from phone number [ending in] 0665 appeared on the screen. On July 25, 2017, at approximately 8:06 a.m., I reviewed TRUVIEW, revealing the phone number [ending in] 0665 only appears on the inmate list of Thomas Hancock, Register Number 60821-007. This cell phone was issued Evidence Control Number (ECN) MRG-17-0080. This phone number is not associated with any other inmate in the Bureau of Prisons in any way. Hancock has been at FCI Morgantown since June 02, 2016. This is a re-write.

(Doc. 7-1, at 13, § 11). On July 28, 2017, the investigating lieutenant delivered a copy of the incident report to Hancock. (Id. at 13-14, §§ 14-16, 22-24). After receiving the incident report, Hancock responded, "I have no statement." (Id. at 14, § 24).

2

On July 31, 2017, Hancock appeared before the Unit Discipline Committee ("UDC"), and again made no statement. (Doc. 7-1, at 13, §§ 17-21). Due to the severity of the charge, the UDC referred the incident report for a hearing before a Discipline Hearing Officer ("DHO"), with a recommendation that sanctions be imposed. (Id. at 13, §§ 19-20).

On July 31, 2017, a staff member informed Hancock of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Doc. 7-1, at 16, Inmate Rights at Discipline Hearing). Hancock was also provided with a "Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)" form. (Doc. 7-1, at 17, Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)). Hancock signed both forms, did not request representation by a staff member, but elected to call a witness on his behalf. (Doc. 7-1, at 16-17).

On August 17, 2017, a DHO hearing was conducted. (Doc. 7-1, at 9-12). During the August 17, 2017 hearing, the DHO confirmed that Hancock received advanced written notice of the charge, that he had been advised of his rights before the DHO, he did not request representation by a staff member, and waived the right to call the previously requested witness. (Id. at 9). The DHO again advised Hancock of his rights, Hancock indicated that he understood them, and that he was ready to proceed with the hearing. (Id. at 10). During the DHO hearing, Hancock denied the charge and stated, "No I didn't use that phone." (Id. at 9, 11).

In addition to the incident report and investigation, the DHO considered documentary evidence including the chain of custody log, two digital photo

3

spreadsheets, a memorandum dated July 24, 2017 from Lieutenant Montgomery, a four-page TRUVIEW report, and seven emails between Hancock and other individuals. (Doc. 7-1, at 10, § III(D)). The DHO noted that Lieutenant Montgomery's memorandum stated that while taking a photograph of the cell phone, "an incoming 'Whatsapp video call' from phone number [ending in] 0665 appeared on the screen." (Id. at p. 13, § V). The DHO noted that photographic evidence of the cellular phone which displays the incoming video call and the phone number in which the call originates supports his decision. (Id. at pp. 12, 14, § V). The DHO also noted that, in accordance with his rights, Hancock chose to make no statements during the disciplinary process. (Id. at § V). The DHO found that if Hancock was innocent of the charge, he would have provided a statement to refute the charge. (Id. at p. 11, § V). Ultimately, the DHO determined that Hancock's defense, denial of the charge and that the cell phone was found on another inmate, did not outweigh the evidence presented by the reporting officer. (Id.) The DHO stated, "[t]he DHO does not believe that it is mere coincidence that a phone number associated only with [Hancock], was observed to be calling this cellular phone and this information confirms that you in fact did possess this cellular phone at some point during your incarceration at FCI Morgantown and used it to communicate with this phone number." (Id.)

After consideration of the evidence, the DHO found that Hancock committed the code 108 offense of possession of a hazardous tool or other electronic device (cellular phone). (Doc. 7-1, at 10-11, § V). The DHO sanctioned Hancock with forty-one (41) days loss of good conduct time, thirty (30) days disciplinary segregation,

and loss of commissary and phone privileges for one (1) year.  (Id. at 11, § VI).  At the conclusion of the hearing, the DHO advised Hancock of his appeal rights.  (Id. at 12, § VIII).

Hancock's sanctions included the loss of good conduct time, therefore he has identified a liberty interest in this matter.  Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law.  Torres v. Fauver, 292 F.3d 141 (3d Cir. 2002).  It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time.  Id.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and, (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action.  Wolff, 418 U.S. at 563-67.  The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any

5

evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled: *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an incident report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. The incident is then referred to the UDC for an initial hearing pursuant to § 541.7. The UDC "will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays." 28 C.F.R. § 541.7(c). This period may be extended if the incident is being investigated for possible criminal prosecution. 28 C.F.R. § 541.4(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. 28 C.F.R. § 541.7(f). If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. § 541.7(a), (g). The inmate will receive written notice of the charge(s) against him at least twenty-four hours before

the DHO's hearing, however the inmate may waive this requirement. 28 C.F.R. § 541.8(c). The inmate is entitled to have a staff representative, appear at the hearing, make a statement, present documentary evidence, and present witnesses. 28 C.F.R. §§ 541.8(d), (e), (f). Following the hearing, the inmate will receive a written copy of the DHO's decision. 28 C.F.R. § 541.8(h).

In the case at bar, it is clear that Hancock was afforded all of the required procedural rights set forth in Wolff. He received the incident report on July 28, 2017 and appeared before the UDC. Hancock was properly informed of his rights before the DHO hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. Hancock declined a staff representative, declined to call any witnesses, and presented no evidence in support of his position. At the conclusion of the hearing, Hancock received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision. Hancock was also notified of his right to appeal.

Since Hancock was afforded all of his procedural rights, the only remaining issue is whether there was "some evidence" to support the decision by the DHO. The record clearly reveals the existence of evidence to allow the DHO to conclude that Hancock was guilty of the charge. The DHO determined that the greater weight of the evidence supported the finding that Hancock violated code 108. In reaching the decision, the DHO considered the reporting officer's written statement in the incident report, the July 24, 2017 memorandum from Lieutenant Montgomery, the photograph of the cellphone depicting the incoming video call and

the phone number in which the call originated, and Hancock's failure to adduce any evidence in his defense. (Doc. 7-1, at 10-11, § V). Based upon the record as relied upon by the DHO, and without any contradictory evidence submitted by Hancock, except a self-serving statement that "No I didn't use that phone", the court finds that Hancock's due process rights were not violated by the determination of the DHO. (Doc. 7-1 at 9, 11).

Finally, the court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541, *et seq.* Hancock was found guilty of a 100-level, greatest severity prohibited act. Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 100-level prohibited acts:

- A. Recommend parole date rescission or retardation.
- B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
- B.1. Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
- C. Disciplinary segregation (up to 12 months).
- D. Make monetary restitution.
- E. Monetary fine.
- F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
- G. Change housing (quarters).
- H. Remove from program and/or group activity.
- I. Loss of job.

    J.     Impound inmate's personal property.
    K.    Confiscate contraband.
    L.     Restrict to quarters.
    M.    Extra duty.

28 C.F.R. § 541.3 (Table 1).

Thus, the sanctions imposed by the DHO in this instance were consistent with the severity level of the prohibited acts and within the maximum available to the DHO. Accordingly, the petition will be denied as to incident report number 3015333.

### III. Conclusion

Based on the foregoing, the court will deny the petition for writ of habeas corpus. An appropriate order shall issue.

          /S/ CHRISTOPHER C. CONNER
         Christopher C. Conner, Chief Judge
         United States District Court
         Middle District of Pennsylvania

Dated:      November 4, 2019